Elbert Howard COLE, Appellant,

v.

KENTUCKY UNEMPLOYMENT INSUR-
ANCE COMMISSION et al., Appellees.

Court of Appeals of Kentucky.

Aug. 5, 1958.

W. Scott Miller, Jr., Louisville, for appellant.

Paul Tierney, Frankfort, Guy Shearer, Louisville, Robert T. Caldwell, Ashland, for appellee.

STANLEY, Commissioner.

The Congress recently enacted an Act which is given the short title of "Temporary Unemployment Compensation Act of 1958." 42 U.S.C.A. § 1400 et seq. Its purpose is to provide payments to eligible persons whose rights to benefits under the permanent unemployment compensation statutes (26 U.S.Code, § 3301 et seq.; 42 U.S.C.A. §§ 501–503, 1101 et seq.; KRS, Chapter 341) have been exhausted. The Act extends the rights to any individual claimant for benefits up to a maximum aggregate amount equal to 50 percent of the total sum which was payable to him under, inter alia, "Any unemployment compensation law of a State." § 101(a) (1), (3) (A). Elsewhere in the Act the application and use of state laws is particularly set forth. The Congress has made an appropriation for the contemplated payments. However, the Act specifies that "payment of temporary unemployment compensation under this Act shall be made only pursuant to an agreement entered into under section 102 and only for weeks of unemployment beginning after the date on which the agreement is entered into." The agreement referred to, which is made a condition precedent to payments being made within a given State, must be executed by the Secretary of Labor of the United States "with a State, or with the agency administering the unemployment compensation law of such State, under which such State agency—

"(1) will make, as agent of the United States, payments of temporary unemployment compensation to the individuals referred to in section 101 on the basis provided in this Act; and

(2) will otherwise cooperate with the Secretary and with other State agencies in making payments of temporary unemployment compensation under this Act."

Another material condition of the Act is that if the State enters into such an agreement, the United States Treasury must be repaid the sums advanced or paid to the beneficiaries. The provision with respect to repayment, § 104(a) is, as follows:

"Repayment

In General

"Sec. 104. (a) The total credits allowed under section 3302(c) of the Federal Unemployment Tax Act (26 U.S.C. 3302(c)) to taxpayers with respect to wages attributable to a State for the taxable year beginning on January 1, 1963, and for each taxable year thereafter, shall be reduced in the same manner as that provided by section 3302(c) (2) of the Federal Unemployment Tax Act for the repayment of advances made under title XII of the Social Security Act, as amended (42 U.S.C. 1321 et seq.), unless or until the Secretary of the Treasury finds that by December 1 of the taxable year there have been restored to the Treasury the amounts of temporary unemployment compensation paid in the State under this Act (except amounts paid to individuals who exhausted their unemployment compensation under title XV of the Social Security Act and title IV of the Veterans' Readjustment Assistance Act of 1952 prior to their making their first claims under this Act), the amount of costs incurred in the administration of this Act with respect to the State, and the amount estimated by the Secretary

of Labor as the State's proportionate share of other costs incurred in the administration of this Act."

This class action was instituted against the Kentucky Unemployment Insurance Commission and V. E. Barnes, Commissioner of Economic Security (KRS 341.110) by the appellant, Elbert Howard Cole, as an eligible beneficiary to have the court declare the rights of himself and others similarly situated under the Act. The Associated Industries of Kentucky (a group of interested employers) were permitted to intervene and to join the defendants in opposing the plaintiff's contentions.

Several issues were raised in the case, but the circuit court declared and adjudged merely "that only the General Assembly of the Commonwealth of Kentucky may extend unemployment payments beyond the present statutory period." It is implicit in the judgment, obviously, that the State agency and officer have no legal authority under existing statutes to enter into the agreement with the Secretary of Labor as above described.

For the argument, we may agree with appellant that the authority conferred by our statute, KRS 341.145, upon the Unemployment Compensation Commission for the general administration of the unemployment system or program and upon the Commissioner of Economic Security specifically to make reciprocal arrangements with the Federal Government would be broad enough if the Act merely provided that the Commission or Commissioner should act as the fiscal agent or as a conduit of the Federal government to pass on its appropriation to eligible beneficiaries in Kentucky. But the Act is not so limited. The Act, as we construe it, makes the payments only advancements or loans to the state system to be repaid in the manner prescribed by Section 104(a) quoted above. It is to be noted this section provides that "The total credits allowed [under Federal law] to taxpayers with respect to wages attributable to a state for the taxable year beginning

on January 1, 1963, and for each taxable year thereafter, shall be reduced * * * unless or until the Secretary of the Treasury finds * * * there have been restored to the Treasury the amounts of temporary unemployment compensation paid in the State under this Act" et cetera.

The Federal government imposes on every subject employer an excise tax equal to 3 percent of the total wages paid by him during a calendar year. 26 U.S.Code, § 3301. Then the taxpayer is allowed as a credit against such tax an amount up to 90 percent of the total "contributions" or taxes he may have paid into an unemployment fund maintained under State law, which is up to 2.7 percent of wages paid, varied according to the status of each employer's "reserve account." 26 U.S.Code, § 3302; KRS 341.270. It is this credit of a maximum of 2.7 percent allowed by the Federal government against its 3 percent tax rate that would be reduced in order to reimburse the Treasury. To state it otherwise, the employer's liability to the Federal government would be increased without comparable decrease in "contributions" or taxes paid the State.

The provision for reducing the tax credits applies "unless or until * * * there have been restored to the Treasury the amounts of temporary unemployment compensation paid in the State under this Act." But the manner and source of the restoration are not stated, and we have no information concerning the matter.

So, the result of executing the agreement which would make available the additional benefits would ultimately be an increase in the total taxes to be paid by the employers of the State. It is sure and certain the Legislature did not confer and never intended to confer upon the agency or officer the power to enter into such an arrangement or otherwise to increase or impose a tax upon the affected employers. The Commission and the Commissioner have taken the position that they have no such power and the Circuit Court has so adjudged. We concur.

Other questions as to whether proper legislation could be enacted which would enable eligible persons to receive the benefits of the present Federal Act, and as to whether an obligation that might be assumed to reimburse the Federal treasury would constitute an invalid debt, need not be decided. Decision on those and other questions is reserved.

The judgment is affirmed.